UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

AT LAW AND IN ADMIRALTY

JENNIFER SUTTON,

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISES LTD., a/k/a
ROYAL CARIBBEAN CRUISES LTD., A
LIBERIAN CORPORATION, d/b/a
ROYAL CARIBBEAN CRUISE LINE and
d/b/a ROYAL CARIBBEAN INTERNATIONAL,

    Defendant.
_____/

## COMPLAINT

The Plaintiff, JENNIFER SUTTON, hereby sues the Defendant, ROYAL CARIBBEAN CRUISES LTD., ROYAL CARIBBEAN CRUISES LTD., A LIBERIAN CORPORATION, d/b/a d/b/a ROYAL CARIBBEAN CRUISE LINE and d/b/a ROYAL CARIBBEAN INTERNATIONAL (hereinafter referred to as ROYAL CARIBBEAN, the Defendant, or the cruise line), and files this Complaint and alleges:

### THE PARTIES AND JURISDICTION

1.    This is an action seeking damages in excess of $75,000.00, exclusive of interest, costs and attorney's fees.

2. **FEDERAL SUBJECT MATTER JURISDICTION**. Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state, and arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C.§ 1333, and is being filed in Federal Court as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

3. **THE PLAINTIFF**. The Plaintiff, JENNIFER SUTTON, is sui juris and is a resident of Chapel Hill, North Carolina.

4. **THE DEFENDANT**. The Defendant, ROYAL CARIBBEAN, has its principal place of business in Miami, Florida. ROYAL CARIBBEAN is incorporated outside the State of Florida, but does business in the State of Florida, and at all times material hereto was and is doing business in Miami-Dade County, Florida. At all times material hereto, the Defendant owned and/or operated the cruise ship and operated and organized the cruise on which the subject negligence occurred.

5. **VENUE AND PERSONAL JURISDICTION**. The Defendant, at all times material hereto, personally or through an agent, in the County and in the District in which this Complaint is filed:

    a. Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

    b. Had an office or agency in this state and/or county; and/or

    c. Engaged in substantial activity within this state; and/or

        d.      Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

6.     All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## OTHER ALLEGATIONS COMMON TO ALL COUNTS

7.     **DATE OF INCIDENT.**  This incident occurred on January 21, 2016.

8.     **LOCATION OF INCIDENT.**  The Plaintiff was a passenger of the vessel ROYAL CARIBBEAN, *Independence of the Seas*, a ship in navigable water while the Plaintiff was a passenger onboard. Accordingly, the Plaintiff's claims are governed by General Maritime Law. Specifically, the subject incident occurred in the Labyrinth Night Club onboard the *Independence of the Seas*.

9.     **STATUS OF PLAINTIFF AS OF DATE AND TIME OF INCIDENT.** At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and accordingly, was an invitee while on the vessel. The Plaintiff is not in possession of the Passenger Contract Ticket. ROYAL CARIBBEAN is in possession of the Passenger Contract Ticket.

## COUNT I
## NEGLIGENCE

10.    The Plaintiff, JENNIFER SUTTON, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 9, above.

11. This is an action for negligence.  ROYAL CARIBBEAN has a duty of due care under the circumstances to provide safe entertainment spaces to its passengers, including night clubs.  The circumstances are that ROYAL CARIBBEAN operates over twenty (20) cruise ships. On each and every ship there are nightclubs and bars. One such nightclub onboard the *Independence of the Seas* is the Labyrinth Night Club, which the Plaintiff visited on the evening of January 21, 2016.

ROYAL CARIBBEAN knows that these areas onboard its ships are very popular. Because ROYAL CARIBBEAN knows that many passengers frequent these bars and nightclubs, the cruise line knows that it must keep these areas free from hazardous conditions.

12. ROYAL CARIBBEAN also participates in the construction, design, and decoration of its night clubs, including the Labyrinth Night Club.  Because the *Independence of the Seas* often carries over 4,000 passengers into rough or high seas, ROYAL CARIBBEAN must inspect, correct, and maintain all areas of the ship, including the Labyrinth Night Club. Therefore, ROYAL CARIBBEAN's duty of care under the circumstances also included designing a safe night club and selecting decorations, fixtures, and features for the night clubs, which were stable and safe for its passengers.  ROYAL CARIBBEAN's duty included training and ensuring that its employees regularly inspected and maintained the dangerous mirrors placed in the Labyrinth Night Club.

13. ROYAL CARIBBEAN knew or should have known of the instability and danger presented by the mirrors it attached to the ceiling of the Labyrinth Night Club.  ROYAL CARIBBEAN has provided and operated entertainment spaces in its fleet since the inception of the cruise line.  ROYAL CARIBBEAN participated in the design of the Labyrinth Night Club and the selection of the aesthetics and decorations inside the night club.  ROYAL CARIBBEAN has known through other incidents of passengers hurt on its cruise ships by falling objects that it is critically important to design safe entertainment spaces and to regularly inspect them to prevent injury to passengers.

14.  ROYAL CARIBBEAN knew or should have known that placing heavy oval-shaped mirrors on a ceiling in a high traffic, night club created an unacceptable risk of the mirrors coming loose and falling onto passengers. ROYAL CARIBBEAN knows the risk is especially high because ROYAL CARIBBEAN regularly takes its large ships onto the high seas where weather and sea

conditions are often unpredictable. The cruise ship will inevitably be jarred by poor sea conditions causing various objects to shift and come loose, including the mirrors on the ceiling of the Labyrinth Night Club.

16. ROYAL CARIBBEAN either (a) created the dangerous condition, through its agents or employees; (b) had actual knowledge of the dangerous condition; and/or (c) had constructive knowledge of the dangerous condition.

17. ROYAL CARIBBEAN had constructive knowledge of the dangerous condition by, inter alia, (a) the length of time the dangerous condition existed; (b) the nature of the dangerous condition that is that the condition was a heavy mirror unsafely fixed to the ceiling and capable of falling on passengers in the night club and/or (c) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity. Thus, the dangerous condition was reasonably foreseeable and in the exercise of reasonable care ROYAL CARIBBEAN should have known about it.

18. In the alternative, notice to ROYAL CARIBBEAN is not required because ROYAL CARIBBEAN (a) engaged in and was guilty of negligent maintenance; and/or (b) engaged in and was guilty of negligent methods of operations of the mirrors in the Labyrinth Night Club. Therefore, no notice to ROYAL CARIBBEAN is required.

19. The fall of the mirror from the ceiling in the Labyrinth Night Club would not in the ordinary course of events have occurred without negligence on the part of the one in control of the mirror and the subject night club, including its creation, inspection, and maintenance, that is, ROYAL CARIBBEAN.

20. ROYAL CARIBBEAN breached its duties by designing an unsafe night club which featured mirrors on the ceiling capable of coming loose and striking unsuspecting passengers; by

failing to select a different, alternative, and safe night club design, including different, lighter, and safer decorations for the night club's ceiling; by failing to inspect the Labyrinth Night Club on a regular basis to ensure that the mirrors attached to the ceiling were secure and would not fall to the floor onto unsuspecting passengers; by failing to warn passengers of the danger of being struck by objects falling from the ceiling of the night club, including mirrors; and by application of res ipsa loquitor given that ROYAL CARIBBEAN exclusively controlled the mirrors on the ceiling of the Labyrinth Night Club and mirrors do not in the ordinary course of events fall from the ceiling absent the negligence of the one in control of the mirrors.

21. These breaches of ROYAL CARIBBEAN's duty of care under the circumstances proximately caused this incident, including the injuries and damages to the Plaintiff. ROYAL CARIBBEAN's negligent maintenance and design of the Labyrinth Nightclub and the cruise line's failure to adequately and safely mount the ceiling mirrors caused the subject ceiling mirror to become dislodged and strike the Plaintiff on the head on January 21, 2016.  Due to ROYAL CARIBBEAN's negligence, the Plaintiff has suffered severe, debilitating, and permanent injury, including but not necessarily limited to severe headaches.

22.   ROYAL CARIBBEAN's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; and household and other related expenses in the past and in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or

continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands judgment ROYAL CARIBBEAN for all damages to which she is entitled under the General Maritime Law and otherwise including but not limited to economic damages suffered in the past and in the future on a permanent basis by the Plaintiff including but not limited to expenses for medical and psychological care and treatment, household and other expenses, loss of income, and loss of the ability and capacity to earn income in the future; non-economic damages including but not limited to bodily injury, pain, suffering, mental anguish, loss of the enjoyment of life, physical impairment, disability, inconvenience, scarring, and disfigurement; all court costs; all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law; and any and all other damages which the Court deems just and proper.

   /s/ John H. Hickey
John H. Hickey, Esq. (FBN 305081)
hickey@hickeylawfirm.com
**Hickey Law Firm, P.A.**
1401 Brickell Avenue, Suite 510
Miami, FL 33131-3504
Tel. (305) 371-8000
Fax (305) 371-3542
*Attorneys for the Plaintiff*